**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0001803
13-DEC-2017
09:04 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---oOo---

BERNADINE KUAHIWINUI, Individually and as
Personal Representative of the Estate of
KRISTERPHER KAUPU-KUAHIWINUI, deceased; and
KENNETH KAUPU, Plaintiffs-Appellants,
v.
ZELO'S INC., dba SUSHI & BLUES;
TAHITI NUI ENTERPRISES, INC., dba TAHITI NUI;
and STATE OF HAWAI'I, Defendants-Appellees,
and
JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10;
DOE BUSINESS ENTITIES 1-10; DOE GOVERNMENTAL ENTITIES 1-10;
and DOE UNINCORPORATED ASSOCIATIONS 1-10, Defendants.

ZELO'S INC., dba SUSHI & BLUES,
Third-Party Plaintiff,
v.
SOLOMON MAKUA KUAHIWINUI,
Third-Party Defendant.

STATE OF HAWAI'I,
Third-Party Plaintiff,
v.
SOLOMON KUAHIWINUI and CHRISTOPHER FERGUSON,
Third-Party Defendants.

SHERYL ANN ACKERMAN, Individually;
SHERYL ANN ACKERMAN, as mother of, natural guardian and
next friend for BRITNEY ANN HARDSKY, minor; and
SHERYL ANN ACKERMAN, as Personal Representative of the
Estate of CHRISTOPHER COLE FERGUSON, deceased,
Plaintiffs,
v.
SOLOMON MAKUA KUAHIWINUI; JAMES B. EDMONDS;
TAHITI NUI ENTERPRISES, INC., dba TAHITI NUI;
ZELO'S INC., dba SUSHI & BLUES; STATE OF HAWAIʻI;
THE COUNTY OF KAUAI, Defendants,
and
JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10;
DOE PARTNERSHIPS 1-10, DOE NON-PROFIT ENTITIES 1-10;
and DOE GOVERNMENTAL ENTITIES 1-10, Defendants.

NO. CAAP-13-0001803

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CIVIL NOS. 08-1-0067 and 08-1-0069)

DECEMBER 13, 2017

NAKAMURA, CHIEF JUDGE, AND LEONARD AND REIFURTH, JJ.

OPINION OF THE COURT BY NAKAMURA, CHIEF JUDGE

The Hawaiʻi Supreme Court has established a "common law dram shop negligence [cause of] action" (dram shop cause of action) against liquor licensees based on requirements imposed by Hawaiʻi's liquor control law. Ono v. Applegate, 62 Haw. 131, 137, 612 P.2d 533, 539 (1980). Based on the statutory requirements, the supreme court has held that a liquor licensee has a duty not to serve alcohol to a person it knows or reasonably should know is under the influence of alcohol. The class of people protected by this legal duty and who may assert this cause of action consists of "innocent third parties." Thus, an innocent third party injured by a drunk driver has a negligence cause of action against a liquor licensee that, preceding the injury, served alcohol to the drunk driver, who it knew or reasonably should have known was intoxicated.

2

This appeal presents the question of who falls within the protected class of "innocent third parties" for a dram shop cause of action. In particular, what criteria applies in determining whether a person who accompanied and consumed alcohol with the drunk driver, and later was injured by the drunk driver, qualifies as an innocent third party.

In this case, Kristerpher Kaupu-Kuahiwinui (Kristerpher) was a passenger in a car driven by Solomon Kuahiwinui (Solomon). Kristerpher was fatally injured in a single-car accident when the car broke through a guardrail, went down an steep embankment, and landed in the Hanalei River. Blood tests conducted after the accident showed that the blood alcohol content of both Kristerpher and Solomon significantly exceeded the legal limit for driving. Prior to the accident, Kristerpher had accompanied Solomon to Sushi & Blues, an establishment owned by Zelo's, Inc. (Zelo's), where they both consumed alcoholic beverages. Kristerpher was 19 years old, under the legal drinking age of 21, and Solomon was 25 years old.

Kristerpher's mother, individually and on behalf of Kristerpher's estate, and Kristerpher's father brought a dram shop cause of action against Zelo's. Zelo's moved for summary judgment on the ground that Kristerpher was intoxicated at the time of his death and therefore was not within the class of "innocent third parties" protected by the dram shop cause of action. The Circuit Court of the Fifth Circuit (Circuit Court)[1] granted Zelo's motion for summary judgment.

As explained below, we conclude that whether a person injured by a drunk driver qualifies as an innocent third party does not turn on whether the injured person was intoxicated. Rather, we hold that whether the injured person qualifies as an innocent third party turns on whether the injured person actively contributed to or procured the intoxication of the drunk driver who injured him or her. This holding is consistent with our

---

[1] The Honorable Randal G.B. Valenciano presided.

3

supreme court's rationale for establishing the dram shop cause of action. It is also consistent with the "complicity" defense to dram shop claims recognized by certain other jurisdictions.[2]

Whether Kristerpher qualifies as an innocent third party under our test raises genuine issues of material fact. Accordingly, we conclude that the Circuit Court erred in granting Zelo's motion for summary judgment, and we remand the case for further proceedings.

BACKGROUND

I.

This case arises out of a single-car accident that occurred shortly after midnight. At the time of the accident, Solomon was driving the car and Kristerpher and Christopher Ferguson (Ferguson) were passengers in the car. The car failed to negotiate a turn, broke through a metal guardrail, went down a steep embankment, and landed in the Hanalei River. Solomon was able to escape from the vehicle. Kristerpher and Ferguson were unable to escape and drowned.

At the time of the accident, Kristerpher was 19, Solomon was 25, and Ferguson was 35. Kristerpher and Solomon were cousins, and Ferguson was Kristerpher's family friend. Kristerpher, Solomon, and Ferguson had traveled to Kaua'i to do work on a home owned by James Edmonds (Edmonds). They had worked on Kaua'i for about a week before the accident.

After finishing work on Friday, the three men, with Edmonds' permission, used Edmonds' car. Solomon, who was the only one with a valid driver's license, was the driver. The three men stopped at a bank to cash their paychecks then headed toward Hanalei. Ferguson purchased a twelve-pack of beer, and they drove to Hanalei Bay. According to Solomon, they spent about two hours at Hanalei Bay, where they drank some but not all

---

[2] We rely on the form of "complicity" defense from other jurisdictions that requires proof that the person injured by the drunk driver actively contributed to or procured the driver's intoxication.

of the twelve-pack. Solomon estimated that he drank about two beers, Kristerpher also drank beer, but Solomon was not sure how many, and Ferguson drank the majority of the beer. At Hanalei Bay, the three men also smoked marijuana.

After leaving Hanalei Bay, the three men went to eat dinner at Sushi & Blues, which was operated by Zelo's. At Sushi & Blues, they were served by Zelo's employee, Serge Bullington (Bullington).

In his deposition, Bullington testified that he recalled serving Solomon two beers and two shots of "Flaming Dr. Pepper," a drink consisting of 151-proof rum and Amaretto liqueur, and serving Ferguson two beers, two shots of Flaming Dr. Pepper, and tequila. Bullington denied serving any alcoholic beverage to Kristerpher and said that he only served Kristerpher a Coke. Bullington also stated that the three men did not appear to be intoxicated at any time that he was serving them.

Solomon testified in his deposition that after arriving at Sushi & Blues, Kristerpher and Ferguson ordered drinks immediately, before their meals came, and Kristerpher drank beer throughout dinner. Kristerpher was not asked for identification. According to Solomon, Kristerpher was happy because this was the first time he had been allowed to order drinks. Ferguson and Kristerpher ordered beer and mixed drinks. Solomon did not order any beer at Sushi & Blues, but he recalled having two drinks after dinner, a Kahlua and Bailey's and a mixed drink that Ferguson ordered and brought back from the bar. The mixed drink that Ferguson ordered contained "some kind of really strong alcohol" that Ferguson said was tequila. Kristerpher ordered more of the mixed drink. A Sushi & Blues receipt found in Kristerpher's wallet after the accident showed a cash sale of one Patron Silver and one Amaretto.

At some point, the three men left Sushi & Blues. Kristerpher and Solomon went to an establishment called Tahiti

5

Nui, arriving at around 10:30 p.m. Ferguson went back to the car. At Tahiti Nui, Solomon ordered a beer, but before he could finish the beer, a security guard asked him and Kristerpher to leave. Solomon did not see Kristerpher drink anything at Tahiti Nui.

After leaving Tahiti Nui, Solomon and Kristerpher went back to the car. Ferguson was "kind of asleep already" in the car. The fatal accident occurred while Solomon was driving back to Edmonds' home. After the accident, Solomon was found to have a blood alcohol content (BAC) of 0.13 grams of alcohol per 100 milliliters of blood, Kristerpher's BAC was 0.16 grams of alcohol per 100 milliliters of blood, and Ferguson's BAC was 0.26 grams of alcohol per 100 milliliters of blood. The legal limit for driving is .08 grams of alcohol per 100 milliliters of blood.[3]

II.

Kristerpher's mother, Bernadine Kuahiwinui, individually and as personal representative of Kristerpher's estate, and Kristerpher's father, Kenneth Kaupu (collectively, Plaintiffs) sued Zelo's, doing business as Sushi & Blues. In their First Amended Complaint, Plaintiffs, among other things, asserted a negligence dram shop cause of action against Zelo's. Plaintiffs alleged that Zelo's "negligently permitted Kristerpher, Solomon, and [Ferguson] to remain on the premises and served alcoholic beverages to [them], despite the fact that Kristerpher was underage and each of the three young men were visibly intoxicated." Plaintiffs further alleged that Zelo's "knew or reasonably should have known that Kristerpher[] was underage and that Kristerpher, Solomon, and [Ferguson] were under the influence of liquor and/or visibly intoxicated when they were

---

[3] Hawaii Revised Statutes (HRS) § 291E-61(a)(4) (2007) provides: "A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle: . . . [w]ith .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood."

permitted to remain on the premises and were served alcoholic beverages.[4]

Zelo's moved for summary judgment on Plaintiffs' dram shop claim. Plaintiffs filed a motion in opposition. In its summary judgment pleadings and at the hearing on its motion, Zelo's argued that people who are intoxicated are excluded from the class of "innocent third parties" protected by the dram shop cause of action. Zelo's asserted that because the dram shop cause of action does not protect intoxicated people, and because it was undisputed that Kristerpher was intoxicated at the time of the accident, Zelo's was entitled to summary judgment on Plaintiffs' dram shop claim. The Circuit Court granted Zelo's motion, ruling that Kristerpher was not an "innocent third part[y]."[5] On June 7, 2013, the Circuit Court filed its Final Judgment in favor of Zelo's and against Plaintiffs on Plaintiffs' dram shop cause of action. This appeal followed.

DISCUSSION

I.

Plaintiffs argue that the Circuit Court erred in granting Zelo's motion for summary judgment on Plaintiffs' dram

---

[4] Plaintiffs' First Amended Complaint also named other defendants, including Tahiti Nui Enterprises, Inc., doing business as Tahiti Nui, and the State of Hawai'i. Ferguson's wife, individually, as personal representative of his estate, and on behalf of his daughter, filed a separate lawsuit, which was consolidated with Plaintiffs' lawsuit. Only Plaintiffs' claims against Zelo's are at issue in this appeal.

[5] The Circuit Court's precise basis for concluding that Kristerpher was not an innocent third party is not clear. In rendering its decision at the hearing on Zelo's summary judgment motion, the Circuit Court recited its understanding of the situation as follows:

Basically, you have three individuals, Solom[o]n Kuahiwinui and the two decedents, who gather and decide that they are going to go drinking and they do go drinking. And they -- they consume liquor intentionally. And the amount of liquor and whether they intentionally got intoxicated or not, those are not as important as the fact that they are -- they end up intoxicated.

At the hearing, the Circuit Court concluded that Kristerpher was not an innocent third party, but it did not further elaborate on the basis for its conclusion. The Circuit Court's written order granting Zelo's motion for summary judgment and its Final Judgment did not state reasons for its decision to grant Zelo's summary judgment motion.

shop claim. They contend that the "sole basis" for Zelo's motion was that Kristerpher was voluntarily intoxicated when he was fatally injured and therefore was not in the class of innocent third parties protected by the dram shop cause of action. Plaintiffs argue that contrary to Zelo's position, "the law does not deny relief to the victims of a drunk driver merely because they are 'intoxicated.'" Plaintiffs claim that whether Kristerpher was an innocent third party entitled to pursue a dram shop cause of action was a question of fact for the jury, and therefore, the Circuit Court erred in granting Zelo's motion for summary judgment.

As explained below, we conclude that a person who is intoxicated is not automatically excluded from the class of innocent third parties entitled to pursue a dram shop cause of action. Whether Kristerpher qualifies as an innocent third party in this case does not turn on whether he was intoxicated, but on whether he actively contributed to or procured the intoxication of Solomon, who was driving the car when Kristerpher was fatally injured. Because the question of whether Kristerpher qualifies as an innocent third party raises genuine issues of material fact, we conclude that the Circuit Court erred in granting Zelo's motion for summary judgment.

II.

An understanding of the development of the law on Hawai'i's dram shop cause of action is necessary to resolve the question of who should properly fall within the protected class of innocent third parties under the circumstances of this case.

A.

"Under the old common law rule, an injured third party could not recover against a supplier of liquor for injuries suffered as a result of a tavern patron's intoxication." Ono, 62 Haw. at 134, 612 P.2d at 537. The rationales for this rule were: (1) the proximate cause of the patron's intoxication and the third party's subsequent injury was the patron's consumption of

liquor, not the liquor supplier's selling or serving of liquor; and (2) the injury to the third party was an unforeseeable result of the supplier's furnishing of the liquor. Id.

In Ono, however, the Hawai'i Supreme Court rejected the old common law rule of non-liability and joined numerous other jurisdictions in allowing "a person injured by an inebriated tavern customer to recover from the tavern that provided liquor to the customer." Id. at 136, 612 P.2d at 538. The supreme court established a "common law dram shop negligence [cause of] action" for Hawai'i. Id. at 137, 612 P.2d at 539. The court noted that under the Restatement (Second) of Torts, the standard of conduct of a reasonable man may be "adopted by the court from a legislative enactment[,]" "[e]ven where a legislative enactment contains no express provision that its violation shall result in tort liability[.]" Id. at 137-38, 612 P.2d at 539 (quoting Restatement (Second) of Torts § 285 (1965), § 285 cmt. c). The court held that Hawaii Revised Statutes (HRS) § 281-78(a)(2)(B) (1976) of Hawai'i's liquor control statute, which provided that a liquor licensee shall not sell or furnish liquor to any person who is at that time under the influence of liquor, imposed "a duty upon a tavern keeper not to serve a person under the influence of liquor." Id. at 138, 612 P.2d at 539.[6]

---

[6] At the time relevant to the Ono decision, HRS § 281-78(a)(2)(B) (1976) provided:

    (a)    At no time under any circumstances shall any liquor:

    . . . .

    (2)    Be sold or furnished by any licensee to:

    . . . .

        (B)    Any person at the time under the influence of liquor[.]

The current version of this provision, codified as HRS § 281-78 (b)(1)(B) (2007), similarly provides:

    (b)    At no time under any circumstances shall any licensee or its employee:

(continued...)

The supreme court approved a jury instruction providing that to establish a violation of HRS § 281-78(a)(2)(B) (1976), and thus a licensee's breach of its duty under the dram shop cause of action, a plaintiff must show by a preponderance of the evidence that "[the driver who injured the plaintiff] was under the influence of intoxicating liquor at any time [the driver] was served by [the licensee]; and that [the licensee] knew or reasonably should have known that [the driver] was under the influence of intoxicating liquor at the time [the driver] was so served." Id. at 139, 612 P.2d at 540.

With respect to the proximate cause element of the dram shop cause of action, the court held that "[a] tavern's sale or service of alcohol to an intoxicated automobile driver may be the proximate cause of injuries inflicted upon a third party by the inebriated driver." Id. at 140, 612 P.2d at 540. The court overturned the old common law theory that injury to the third party was an unforeseeable result of the licensee's furnishing of liquor to its customer. The court held that

> the consequences of serving liquor to an intoxicated motorist, in light of the universal use of automobiles and the increasing frequency of accidents involving drunk drivers, are foreseeable to a tavern owner. The consumption, resulting inebriation and injurious conduct are therefore foreseeable intervening acts which will not relieve the tavern of liability.

Id. at 141, 612 P.2d at 540-41 (citations omitted).

Ono had sued the Sand Trap bar, asserting that it had negligently supplied alcohol to Scritchfield when she was under the influence of liquor, which would constitute a violation of HRS § 281-78(a)(2)(B) (1976). Id. at 133, 612 P.2d at 536. Scritchfield later drove her car and collided head on with a car

_____

6/ (...continued)
(1)     Sell, serve, or furnish any liquor to, or allow the
        consumption of any liquor by:

        .   .   .   .

        (B)     Any person at the time under the influence of
                liquor[.]

10

containing Ono. Id. at 132, 612 P.2d at 536. Based on its recognition of a common law dram shop negligence cause of action, the supreme court upheld the jury's finding that the Sand Trap bar was liable to Ono for injuries he sustained in the collision. Id. at 141, 612 P.2d at 541.

B.

After the Ono decision, the Hawai'i Supreme Court addressed the question of whether an intoxicated customer of a liquor licensee can bring a dram shop cause of action against the licensee to recover damages for the customer's own injuries, which were suffered as the result of the customer's driving after drinking alcohol. In a series of cases, the supreme court held that the protection provided by Hawai'i's dram shop cause of action does not extend to intoxicated customers who injure themselves.

In Bertelmann v. Taas Associates, 69 Haw. 95, 96, 735 P.2d 930, 931 (1987), Keliikoa, after drinking alcohol at a hotel, died after he crashed his car in a single-car accident. Keliikoa's estate and his survivors sued the hotel, alleging that hotel employees had furnished alcohol to Keliikoa when they knew or should have known that he was under the influence of liquor, and that their actions caused Keliikoa's death. Id. at 96-97, 735 P.2d at 931-32. The supreme court noted that the question posed by the case was whether "after balancing the policy considerations to allow recovery against those factors limiting liability," it should rule that the hotel owed a duty to Keliikoa under the guidelines established in Ono. Id. at 99, 735 P.2d at 933. The court stated that in establishing the dram shop cause of action in Ono, it "emphasized the need to deter violations of HRS § 281-78(a)(2)(B), prevent the reasonable foreseeable consequences of the violations (i.e. drunk driving accidents), and compensate innocent third parties." Id. at 100, 735 P.2d at 933.

11

In line with the majority of jurisdictions that had considered the issue, the supreme court held that "liquor consumers who are injured because of their intoxication" do not possess a dram shop cause of action against commercial liquor sellers who violate HRS § 281-78(a)(2)(B). Id. The court stated that "[d]runken persons who harm themselves are solely responsible for their voluntary intoxication and cannot prevail under a common law or statutory basis." Id. The court found the following reasoning highly persuasive: "To allow recovery in favor of one who has voluntarily procured a quantity of liquor for his or her own consumption with full knowledge of its possible or probable results 'would savor too much of allowing said person to benefit by his or her own wrongful act[.]'" Id. at 100, 735 P.2d at 933-34 (citation, brackets, italics, and block quote formatting omitted).

The court stated that the statutory provisions prohibiting licensees from furnishing liquor to a person under the influence of liquor or knowingly permitting such person to remain on the premises "were created to protect the general public from drunk driving accidents, not to reward intoxicated liquor consumers for the consequences of their voluntary inebriation." Id. at 101, 735 P.2d at 934. The court concluded that "in the absence of harm to an innocent third party, merely serving liquor to an already intoxicated customer and allowing said customer to leave the premises, of itself, does not constitute actionable negligence." Id. Accordingly, the supreme court held that Keliikoa's estate was not entitled to pursue a dram shop cause of action and that the wrongful death action of Keliikoa's survivors, which were derivative of Keliikoa's claims, were also properly dismissed. Id. at 102-03, 735 P.2d at 934-35.

Following Bertelmann, the supreme court adhered to the principle that an intoxicated customer cannot recover from the liquor licensee for the customer's own injuries suffered while driving. See Feliciano v. Waikiki Deep Water, Inc., 69 Haw. 605,

752 P.2d 1076 (1988) (holding that an intoxicated customer, who had been actively solicited to buy drinks by the licensee, could not sue the licensee to recover for his own injuries sustained while driving); Winters v. Silver Fox Bar, 71 Haw. 524, 797 P.2d 51 (1990) (holding that where an underage customer was sold liquor by a liquor licensee and later lost control of his vehicle and died, the underage customer's estate could not bring a dram shop cause of action against the licensee for the customer's injuries). In Winters, the court stated: "[W]e have refused to further modify the common law dram shop action to permit recovery against commercial suppliers of liquor by inebriated liquor consumers who sustain injuries because of their voluntary intoxication." Winters, 71 Haw. at 527, 797 P.2d at 52-53.

C.

In Reyes v. Kuboyama, 76 Hawai'i 137, 141, 870 P.2d 1281, 1285 (1994), the Hawai'i Supreme Court addressed two questions: "(1) whether there is a duty to innocent third parties on the part of a licensee not to sell liquor to a minor in violation of HRS § 281-78(a)(2)(A) [(1985)]";[1/] and (2) if there

---

[1/] At the time relevant to the Reyes decision, HRS § 281-78(a)(2)(A) (1985) provided:

    (a)    At no time under any circumstances shall any liquor:

    . . . .

    (2)    Be sold or furnished by any licensee to:

        (A)    Any minor.

The current version of this provision, codified as HRS § 281-78(b)(1)(A) (2007), similarly provides:

    (b)    At no time under any circumstances shall any licensee or its employee:

    (1)    Sell, serve, or furnish any liquor to, or allow the consumption of any liquor by:

        (A)    Any minor[.]

At the time relevant to the Reyes and currently, for purposes of HRS Chapter 281, a "minor" is defined as "any person below the age of twenty-one years." HRS § 281-1 (2007).

is such a duty, whether it covers a situation "where an innocent third party is injured by an intoxicated minor other than the minor to whom the liquor was sold."

In Reyes, Kuboyama, a liquor licensee who owned and operated a package store, sold at least two cases of cold beer to two nineteen year old minors, Jose and Howard, in violation of HRS § 281-78(a)(2)(A) (1985). Reyes, 76 Hawaiʻi at 139, 870 P.2d at 1283. Corey, who was eighteen, drove Jose and Howard to Kuboyama's store, but Corey did not enter the store. Id. After leaving Kuboyama's store, the boys bought more beer at another store, then went to Howard's home for a party. Id. Tiffany, who was fifteen years old, was at the party, but there did not appear to be any evidence that Tiffany drank alcohol at the party. Id. There was evidence that Corey was inebriated by the end of the party, but it was agreed that he would drive several people home, including Tiffany. Id. After leaving the party, Corey allegedly lost control of his vehicle and crashed off the road, causing Tiffany to sustain injuries. Id. Tiffany's mother, Reyes, on behalf of herself and Tiffany, sued Kuboyama. Id. at 139-40, 870 P.2d at 1283-84. The trial court granted summary judgment in favor Kuboyama, apparently on the theory that Kuboyama did not owe a duty to Tiffany under the circumstances presented, and Reyes appealed. Id. at 140, 870 P.2d at 1284.

With respect to the first question of whether a licensee has a duty to innocent third parties not to sell liquor to a minor in violation of HRS § 281-78(a)(2)(A) (1985), the supreme court answered the question in the affirmative. The supreme court noted that in Ono, it had imposed a duty on liquor licensees not to serve a person under the influence of liquor based on HRS § 281-78(a)(2)(B). Id. at 142, 870 P.2d at 1286. The court further stated that "[w]e have made it explicit, in subsequent decisions, that the protected class we recognized in Ono comprises any innocent third persons, that is, the general public." Id. The court observed that similar to the situation

14

in Ono, where there was a national trend toward recognition of a dram shop duty not to serve alcohol to an intoxicated customer, there was a clear national trend toward recognition of a licensee's duty to innocent third parties not to sell liquor to a minor in violation of a liquor control statute. Id. at 142-43, 870 P.2d at 1286-87.

The supreme court was unpersuaded by Kuboyama's argument that its prior decisions in Bertelmann, Feliciano, and Winters demonstrated the court's reluctance to extend the holding in Ono to other situations. The supreme court explained:

> The issue in the present case concerns a putatively innocent third party who was injured by an intoxicated driver. In this regard, the facts are closer to those presented in Ono and are distinguishable from Bertelmann, Feliciano, and Winters wherein the injured persons were not within the class protected by the statute because their injuries were essentially self-inflicted.

Id. at 144, 870 P.2d at 1288 (emphasis added).

The supreme court concluded that the rationale for recognizing a duty to innocent third parties under HRS § 281-78(a)(2)(B) also applied to HRS § 281-78(a)(2)(A). Id. at 145, 870 P.2d at 1289. It thus held that licensees have a duty to innocent third parties not to sell alcohol to minors in violation of HRS § 281-78(a)(2)(A). Id.

Having recognized this duty, the court addressed the question of whether it includes the situation where an innocent third party is injured by an intoxicated minor other than the minor to whom the liquor was sold. Id. The supreme court held that the HRS § 281-78(a)(2)(A) duty it recognized includes this situation, but that liability would be "subject to determinations by the trier of fact on the issue of reasonable foreseeability." Id. at 146, 870 P.2d at 1290. As applied to the case before it, the court concluded that to establish liability, Reyes "would have to produce sufficient evidence to show that it was reasonably foreseeable to Kuboyama that minors other than those to whom the liquor had been sold would consume the liquor, become intoxicated, and drive a vehicle." Id. at 146-47, 870 P.2d at

15

1290-91. The supreme court vacated the trial court's grant of summary judgment in favor of Kuboyama and remanded the case for further proceedings. Id. at 147, 870 P.2d at 1291.

III.

Zelo's contends that "Ono and its progeny makes clear that a liquor consumer is not within the intended class of protected persons for [whom] a duty has been imposed upon dram shop owners." Zelo's argues that because Kristerpher was intoxicated at the time he was fatally injured, he was automatically excluded from the class of innocent third parties entitled to pursue a dram shop cause of action. We disagree.

Contrary to Zelo's contention, liquor consumers who are injured by drunk drivers are not automatically precluded under Hawai'i precedents from pursuing a dram shop cause of action against a liquor licensee. The Hawai'i precedents establish that an intoxicated customer of a liquor licensee *who injures himself or herself* while driving drunk cannot bring a dram shop cause of action against the licensee to recover damages for the customer's own injuries. This is because the dram shop cause of action was established to protect innocent third parties against drunk driving accidents, and not to protect customers who become intoxicated and then harm themselves or suffer self-inflicted injuries. See Bertlemann, 69 Haw. at 100-01, 735 P.2d at 933-34; Reyes, 76 Hawai'i at 144, 870 P.2d at 1288. But, a consumer of alcohol who is injured by the actions of a drunk driver is not suing to recover for self-inflicted injuries. Nor is that person seeking to recover for injuries caused by his or her own intoxication. Hawai'i precedents do not support Zelo's claim that liquor consumers who are injured by a drunk driver are barred from pursuing a dram shop cause of action.[8]

---

[8] In its answering brief, Zelo's cites a statement in Bertelmann that "[l]iquor consumers are not within the class of persons for whose benefit [the statutory provisions prohibiting licensees from serving intoxicated customers or permitting them to remain on the premises] were enacted." Bertlemann, 69 Haw. at 101, 735 P.2d at 934. Zelo's reliance on this statement is misplaced.
(continued...)

Indeed, a rule barring liquor consumers, including intoxicated consumers, who are injured by drunk drivers from bringing a dram shop cause of action would lead to absurd results. For example, say a licensee served alcohol to a customer it knew was intoxicated and the customer thereafter drove his car while drunk and collided with another car with two passengers, one who had consumed alcohol and the other who had not, severely injuring both passengers. Under Zelo's proffered rule that precludes any liquor consumer from bringing a dram shop cause of action, the passenger who did not consume alcohol could sue the licensee but the alcohol-consuming passenger could not. But there is no rational reason for distinguishing between the two passengers. Both would have been injured through no fault of their own, and the consumption of alcohol by the alcohol-consuming passenger would not have caused or contributed to that passenger's injuries.

The supreme court's purpose for establishing the dram shop cause of action would not be furthered by distinguishing between the two passengers. In establishing the dram shop cause of action, the supreme court "emphasized the need to deter violations of HRS § 281-78(a)(2)(B), prevent the reasonable foreseeable consequences of the violations (i.e. drunk driving accidents), and compensate innocent third parties." Bertlemann, 69 Haw. at 100, 735 P.2d at 933. The first two purposes apply equally to both passengers. The third purpose -- compensate innocent third parties -- would also be served by allowing the

---

[8]/ (...continued)
In Bertelmann, the supreme court addressed the question of whether intoxicated customers could bring a dram shop cause of action to recover for their own injuries. Thus, read in context, the reference to "liquor consumers" was clearly a reference to liquor consumers who were seeking to recover for their own injuries. This is made clear by the preceding sentence, which notes that the cited statutory provisions were not created "to reward intoxicated liquor consumers for the consequences of their voluntary inebriation," and the subsequent sentence, which states that the hotel's statutory violations "did not create a cause of action in favor of [the intoxicated customer who injured himself]." Id. Thus Bertelmann does not support Zelo's claim that all liquor consumers are automatically barred from pursuing a dram shop cause of action.

alcohol-consuming passenger to sue. There is no reason why the passenger's consumption of alcohol would render him or her non-innocent with respect to the injuries sustained or the licensee's violation of the statutory requirements. As noted, the passenger's consumption of alcohol would not have caused or contributed to the accident. This is true even if the passenger had consumed alcohol to the point of being intoxicated. The law prohibits driving while intoxicated, not being a passenger while intoxicated. In the context of dram shop claim, we do not see why a passenger's consumption of alcohol would make him or her any less innocent than a passenger who did not consume alcohol.

In support of its motion for summary judgment, Zelo's argued that Kristerpher's intoxicated when the fatal accident occurred automatically excluded him from the class of innocent third parties protected by the dram shop cause of action. The Circuit Court erred to the extent it relied on this argument in granting Zelo's motion for summary judgment. We conclude that Kristerpher's intoxication did not preclude Plaintiffs from bringing a dram shop cause of action against Zelo's.

IV.

We now turn to the question of who falls within the protected class of "innocent third parties." Our supreme court has used this phrase to define the class of people entitled to pursue a dram shop cause of action, but has not provided much direct guidance on what it means or how it should be applied to the circumstances of this case. Given the purpose of the phrase "innocent third parties," the term "innocent" should not be construed generically, but with specific reference to the supreme court's reasons and intent in establishing the dram shop cause of action and in restricting its application to exclude intoxicated customers who injure themselves.

A.

In establishing the dram shop cause of action, the supreme court recognized the grave societal costs attributable to

18

injuries caused by drunk drivers. The supreme court imposed dram shop liability to deter licensees from violating the prohibition against serving intoxicated customers, prevent drunk driving accidents, and compensate "innocent" third party victims. However, in excluding intoxicated customers who injure themselves from the protected class, the court embraced the rationale that allowing customers who voluntarily become intoxicated to recover for their own injuries would enable them to benefit from their own voluntary acts and wrongdoing. A customer who voluntarily consumes alcohol while intoxicated directly participates and joins with the licensee in the licensee's violation of the statutory prohibition against serving intoxicated customers. The customer who voluntarily becomes intoxicated and then drives does so with full knowledge of the possible dangerous consequences of his or her actions and engages in a wrongful act. The supreme court has held that a person who engages in such conduct and then injures himself or herself is not an innocent third party entitled to protection.

Given the supreme court's reasons for defining the protected class as innocent third parties, the question of who falls within the protected class should focus on the extent to which the injured third party was responsible for the intoxication of the customer who drove drunk and injured the third party. We conclude that in the context of this case, the appropriate test for who qualifies as an innocent third party is whether the injured person actively contributed to or procured the intoxication of the drunk driver who injured him or her. An injured person who actively contributes to or procures the drunk driver's intoxication directly participates and joins with the licensee in creating the danger that the dram shop cause of action was intended to deter and prevent. In addition, permitting an injured person who engages in such conduct to recover for injuries inflicted by the drunk driver would in effect allow the injured person to benefit from his or her own

wrongdoing. Thus, the test we adopt is supported by and is fully consistent with the supreme court's rationale for excluding intoxicated customers who drive drunk and harm themselves from the protected class.

In balancing the policy considerations for allowing recovery against those for limiting liability, we conclude that the injured person must "actively" contribute to or procure the drunk driver's intoxication to be excluded from the protected class. The mere fact that the injured person accompanied and was present when the drunk driver consumed alcohol at the licensee's establishment, or the fact that the injured person consumed alcohol with the drunk driver at the licensee's establishment, without more, would be insufficient to exclude the injured person from the protected class. Although active contribution to or procurement of the drunk driver's intoxication is necessary to exclude an injured person from being eligible to bring a dram shop cause of action, passive knowledge of the driver's intoxication would be relevant to whether an injured person was contributorily negligent in becoming a passenger in the drunk driver's vehicle.[9/]

B.

Our test for who falls within the protected class for Hawai'i's dram shop cause of action is consistent with the "complicity" defense certain other jurisdictions have recognized for their dram shop causes of action. See Nelson v. Araiza, 372 N.E.2d 637, 641 (Ill. 1978) ("[O]ne who actively contributes to or procures the intoxication of the inebriate is precluded from recovery."); Craig v. Larson, 439 N.W.2d 899, 902 (Mich. 1989) (holding that a "plaintiff who actively participates in the intoxication of the person who thereafter injures her," is barred from recovery in a dram shop action); Mitchell v. Shoals, Inc.,

---

[9/] In other words, a person falling within the protected class and entitled to bring a dram shop cause of action would still be subject to negligence defenses, including comparative negligence. See Hawaii Revised Statutes (HRS) § 663-31 (2016).

227 N.E.2d 21, 23 (N.Y. 1967) ("As long as the [plaintiff] does not himself cause or procure the intoxication of the other, there is no basis, under the statute, for denying him a recovery from the party unlawfully purveying the liquor."); see also K.R. v. Sanford, 605 N.W.2d 387, 391 (Minn. 2000) (applying complicity doctrine under comparative fault principles to situations where "a plaintiff injured by an intoxicated person . . . participated knowingly and affirmatively in the illegal sale that contributed to the intoxication"); Cote v. Gay, CV 136015822S, 2014 WL 3893086 (Conn. Super. Ct. June 26, 2014) (describing the complicity defense and the participation required to invoke it as: "[P]articipation in this sense requires that the plaintiff actively procure or cause the tortfeasor's intoxication; that is, the plaintiff cannot merely participate in the drinking activities but must be actively involved in bringing about the inebriate's intoxication").

The rationale for this type of complicity defense has been explained as follows: "A party complaining of the wrongful act of a saloonkeeper in causing the intoxication of another, from which damage or injury results to him, must not be an active and willing agent with the saloonkeeper, assisting in causing such intoxication." Nelson, 372 N.E.2d at 639 (internal quotation marks and citation omitted); Cote, 2014 WL 3893086 ("[T]o allow a cause of action to a party who actually aided and brought about the condition of intoxication (along with the vendor) would in effect encourage rather than discourage such overindulgence and the type of aiding and abetting activity that contributes to the presence of intoxicated drivers on our roads." (internal quotation marks and citation omitted)). In applying such complicity defense and assessing who qualifies as an innocent third party, courts have focused on the plaintiff's actions in actively contributing to or procuring the drunk driver's intoxication, and not on other factors such as whether the plaintiff assumed the risk of his or her own injuries by

riding in a car driven by a drunk driver. See Nelson, 372 N.E.2d at 641; Cote 2014 W.L. 3893086.[10]/

V.

In this case, there are genuine issues of material fact regarding whether Kristerpher actively contributed to or procured the intoxication of Solomon and thus, whether Kristerpher falls within the protected class of innocent third parties entitled to bring a dram shop cause of action. Accordingly, the Circuit Court erred in granting summary judgment in favor of Zelo's and against Plaintiffs based on its determination that Kristerpher was not an innocent third party. We vacate the Circuit Court's Final Judgment to the extent that it entered judgment in favor of Zelo's and against Plaintiffs, and we remand the case for further proceedings consistent with this Opinion.

On the briefs:

James J. Bickerton
Nathan P. Roehrig
(Bickerton Lee Dang
    & Sullivan)
for Plaintiffs-Appellants

Michele-Lynn E. Luke
(Kessner Umebayashi Bain
    & Matsunaga)
for Defendant-Appellee
Zelo's, Inc. dba Sushi & Blues

---

[10]/ We note that in a footnote in Reyes, the supreme court suggested that a person's actions in accepting a ride from a drunk driver may be relevant to whether the person qualifies as an innocent third party. The footnote states: "[T]he issue of a plaintiff's 'innocence' may also present a question of fact for the trier of fact to determine. For example, whether a plaintiff was himself or herself negligent for accepting a ride with a driver determined to have been intoxicated." Reyes, 76 Hawai'i at 146 n.8, 870 P.2d at 1290 n.8. However, in rendering its decision in Reyes, the supreme court did not address the scope of the protected class of innocent third parties or the meaning of the term "innocent." Thus, we do not read the comment in the supreme court's footnote as binding authority. For the reasons previously stated, we conclude that the "innocent third party" analysis must focus on whether the injured person actively contributed to or procured the intoxication of the drunk driver who injured him or her.